IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

PERRY JAMES ROSETTO,
    Plaintiff,

v.

ROB JEFFREYS *et al.*,
    Defendants.

Case No. 3:22-cv-03035-JEH

### Order

    Before the Court is a Motion for Summary Judgment (Doc. 83) filed by Defendants Brandon Edgar, Hunter Garbett, Keenan Smith, and Brandon Snell. Plaintiff Perry James Rosetto, an inmate at Illinois River Correctional Center, filed a response (Doc. 97), and Defendants have filed their reply (Doc. 98). Defendants' dispositive motion is granted for the following reasons.

### I

    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

"When opposing a properly supported motion for summary judgment, the non-moving party must 'cit[e] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence … of a genuine dispute.'" *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)). All facts must be construed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence supporting the nonmovant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252.

## II

In March 2022, Plaintiff filed a complaint (Doc. 1) under 42 U.S.C. § 1983, alleging that several officials at Western Illinois Correctional Center ("Western") violated his constitutional rights. After screening, the Court determined, in pertinent part, that Plaintiff stated the following Eighth Amendment claims against: (1) Defendants John Doe and Edgar for excessive force; (2) Defendants Garbett, Smith, and Snell for inhumane conditions of confinement; and (3) Defendant Snell for the alleged conduct of Plaintiff's strip search. (Doc. 16 at 9:1.) In March 2024, the Court dismissed Doe as a Defendant. (Doc. 71 at 2.)

## III

### A

Section 7.1(D)(2) of the Court's Local Rules outlines the requirements when responding to a Motion for Summary Judgment, which mandates addressing each of Defendants' material facts and noting which are undisputed material facts, disputed material facts, disputed immaterial facts, or undisputed immaterial facts.

Civil LR 7.1(D)(2)(b)(1-4). Plaintiff may also add material facts in opposition to the filing. (*Id*. at 7.1(D)(2)(b)(5)). Plaintiff's response does not contain this information.

Instead, Plaintiff proceeds under Federal Rule of Civil Procedure 56(d), which "allows non-movants to argue that further discovery is necessary to resolve the motion." *Felton v. City of Chicago*, 827 F.3d 632, 637 (7th Cir. 2016); *see also* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."). However, "[t]he mere fact that discovery is incomplete is not enough to prevent summary judgment." *Smtih v. OSF Healthcare System*, 933 F.3d 859, 864 (7th Cir. 2019). A party seeking relief under Rule 56(d) must show specific reasons why discovery should be extended, "which requires more than a fond hope that more fishing might net some good evidence." (*Id*.)

A review of the docket shows that the Court entered a Scheduling Order initially setting March 23, 2023, as the close of discovery. (Doc. 33.) After co-Defendant Carolyn Cox and Zorian Trusewych filed a dispositive motion alleging Plaintiff failed to exhaust administrative remedies (Doc. 36), the Court granted their motion to stay discovery (Doc. 38) pending resolution of their filing. On May 2, 2023, the Court denied Defendants' dispositive motion. (Doc. 52.) Three days later, the Court lifted the imposed stay and set October 2, 2023, as the close of discovery.

The Court subsequently considered Plaintiff's Motion to Compel Discovery (Doc. 68). Therein, Plaintiff sought to compel co-Defendants Cox and Trusewych and Defendants Edgar, Garbett, Smith, and Snell, who are represented by different counsel, to respond to the discovery requests Plaintiff served on November 18, 2023, and December 29, 2023.

In their respective responses, counsel for Defendants assert they did not receive the discovery requests Plaintiff claims he sent. On March 18, 2024, the Court denied Plaintiff's motion, noting that he failed to comply with the Court's Scheduling Order by appending the discovery requests at issue to his Motion to Compel. (Doc. 71 at 7-8.) Thereafter, the Court granted the parties' respective Motions for Extensions of Time (Docs. 57, 61, 66, 67), extending the discovery deadline to April 30, 2024. (*Id*. at 8.) The Court also granted each of Plaintiff's subsequent Motions for Extensions of Time (Docs. 72, 73, 78), which extended the close of discovery to September 23, 2024.

Plaintiff asserts that "he has not been given [a] fair opportunity to obtain discoverable evidence." (Pl. Res., Doc. 97 at 2:3.) In support of his Rule 56(d) response, Plaintiff notes his November 18 and December 29, 2023, discovery requests that Defendants state they did not receive. However, Plaintiff does not state what actions he took to acquire the discovery sought in the six months that passed between the Court's March 18, 2024, denial of his motion to compel and the end of discovery on September 23, 2024. For example, Plaintiff neither filed a renewed motion to compel that appended the discovery request nor does Plaintiff claim he resent the discovery request at issue during the six months that passed between the Court's March 18, 2024, Order and the end of discovery on September 23, 2024. Defendants confirm that Plaintiff did not resend the discovery requests and state they produced 1,100 documents that included grievances, counseling records, incident reports, and administrative directives. (Def. Reply, Doc. 98 at 2:7.) Accordingly, the Court denies Plaintiff's Rule 56(d) request.

**B**

Although Plaintiff's failure to respond to Defendants' dispositive motion requires the Court to deem Defendants' factual assertions admitted under Local Rule 7.1(D)(2)(b)(6), summary judgment in favor of the movant is not automatic.

*See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("[A] nonmovant's failure to respond to a summary judgment motion, … does not, of course, automatically result in judgment for the movant.") The ultimate burden remains with Defendants to show that they are entitled to judgment as a matter of law. *Id*. Thus, the following material facts are based on Defendants' properly supported brief and the Court's review of the provided record.

Plaintiff was shot in 2006, about nine years before entering the Illinois Department of Corrections ("IDOC") in 2015. (Pl. Dep., Doc. 84-1 at 88.) Afterward, Plaintiff was told that he would experience pain and nerve damage during his life, as removing the bullet would cause more damage. (*Id*. at 86.) Plaintiff received medical treatment in the form of pain medication before entering IDOC. (*Id*. at 85.) At the time of his October 19, 2023, deposition, Plaintiff acknowledged receiving muscle relaxers while at Western for his condition. (*Id*. at 88-89.)

On February 27, 2020, during a tactical team operation at Western, Plaintiff was part of a group of about two hundred inmates who were taken to the gymnasium. (*Id*. at 33, 40, 47.) Plaintiff's hands were cuffed behind his back, and he was ordered to stand facing the wall with his head down. (Pl. Compl., Doc 1 at 9.) One of the tactical team officers asked Plaintiff about his health conditions, and Plaintiff responded that a bullet was lodged in his sacrum, causing him nerve issues in his lower extremities. (*Id*.) Plaintiff informed the officer that he could not stand or sit for extended periods. (*Id*.) The officer told Plaintiff that he could lean against the wall if his legs started to go numb. (*Id*.)

About ninety minutes passed when Plaintiff's legs started to numb, which caused him to slide down and onto the floor. (Pl. Dep., Doc. 84-1 at 34.) While on his knees, the numbness increased, so Plaintiff lay down on the floor. (*Id*.) Afterward, Plaintiff lacked the physical ability to either stand or sit, especially without the use of his hands, which remained handcuffed. (*Id*. at 160-61.)

An unidentified tactical team officer noticed Plaintiff lying on the floor and asked what was wrong. (*Id*. at 35.) Plaintiff explained that he had physical limitations due to having been shot. (*Id*.) The officer left briefly but returned, accompanied by about five additional tactical team members, one of whom was Defendant Edgar. (*Id*. at 35, 41.) Plaintiff was able to identify Edgar because he had removed his helmet at some point during the events of February 27, 2020, but he could not identify the remaining officers. (*Id*. at 36, 61.)

The group of officers demanded that Plaintiff stand up, and Plaintiff responded that he could not. (*Id*. at 45.) Defendant Edgar and an unnamed officer then grabbed Plaintiff by the arms and dragged him about fifty feet to an office located on one side of the gymnasium. (Pl. Compl., Doc. 1 at 11; Pl. Dep., Doc. 84-1 at 40, 46.) Plaintiff screamed in pain as he was being dragged to an area outside of the officers' cafeteria and thrown into a chair, where a nurse examined him. (Pl. Compl., Doc. 1 at 10-11; Pl. Dep., Doc. 84-1 at 46, 50.) The nurse determined that Plaintiff's lower extremities were numb and called for a wheelchair. (Pl. Compl., Doc. 1 at 11.)

Plaintiff was placed in a wheelchair. (Pl. Dep., Doc. 84-1 at 50.) The officers who confronted Plaintiff in the gymnasium, including Defendant Edgar, wheeled Plaintiff to the segregation unit. (*Id*. at 62.) Upon reaching the segregation unit, the officer pushing the wheelchair placed it at the entrance to a holding cell and demanded that Plaintiff get up, to which Plaintiff responded that he could not. (Pl. Compl., Doc. 1 at 12.) The officer told Plaintiff that, if he did not get up on his own, he was not "going to like it." (*Id*.)

Plaintiff attempted to pull himself up using the holding cell fencing and a ring attached to the wall, but the officer struck him from behind with the wheelchair, knocking him out of the wheelchair and into the wall. (*Id*.) When Plaintiff protested that treatment as cowardly," the officer threatened to return

later and "show [Plaintiff] who the coward is." (*Id.*) As a result, Plaintiff told the sergeant on duty that he wanted to speak to a member of the crisis team. (*Id.*)

Shortly thereafter, a Qualified Mental Health Professional ("QMHP") spoke with Plaintiff in the segregation unit. (*Id.* at 13.) Plaintiff was then placed on crisis watch status after stating he felt suicidal. (*Id.*) Thereafter, Defendant Snell conducted a strip search of Plaintiff. (Pl. Dep., 84-1 at 66.) The strip search was conducted in a cage in the segregation unit, in front of numerous corrections officers and other inmates housed there. (*Id.* at 69.) As part of the strip search, Snell made Plaintiff bend at the waist and spread his buttocks, threatening to spray Plaintiff with mace if he did not comply. (Pl. Compl., Doc. 1 at 14.) Snell gave Plaintiff a small smock to put on after the search, which did not fit, as Plaintiff stood six feet one inch tall and weighed 264 pounds. (Pl. Dep., 84-1 at 70; Pl. Med. Hist., Doc. 84-2 at 5.) Plaintiff remained in the holding cell, without any clothing, for about forty minutes. (Pl. Compl., Doc. 1 at 14.) At that point, Snell gave Plaintiff a smock that fit. (*Id.*)

Plaintiff was issued a disciplinary ticket by Defendant Edgar for disobeying direct orders to stand up after he slid to the floor in the gymnasium on February 27, 2020. (Adj. Cmte. Rpt., Doc. 84-2 at 1-3.) Plaintiff remained on crisis watch from February 27 to April 27, 2020. (Pl. Dep. Doc. 84-1 at 93.) Plaintiff was repeatedly allowed to meet with the QMHP but refused on most occasions because the QMHP declined to file a Prison Rape Elimination Act claim or to listen to his concerns. (*Id.* at 93-96.) During Plaintiff's time on crisis watch, Defendants Garbett, Smith, and Snell, each of whom worked the 7:00 am shift, would kick the door of Plaintiff's cell a couple of times a day. (*Id.* at 74-75.) Plaintiff admitted the kicking was random and did not happen every day. (*Id.*)

For several days during the week of April 5, 2020, Defendants Garbett, Smith, and Snell refused to provide Plaintiff with toilet paper. (Doc. 1, p. 19.)

Garbett, Smith, and Snell also denied him a toothbrush and only allowed him two showers during his sixty-one days in crisis watch. (Pl. Dep., Doc. 84-1 at 76-77, 124.) Plaintiff acknowledged that the second shift correctional officers provided him with a toothbrush and toothpaste. (*Id.* at 77.) Also, while on crisis watch, Plaintiff was restricted to receiving "finger food" for meals due to the prohibition on eating utensils in crisis watch cells. However, Plaintiff claims that he continued to receive food that could only be eaten with a fork or a spoon, such as spaghetti, baked beans, mashed potatoes, and salad. (*Id*. at 79, 96.) During this time, Plaintiff could not eat a full meal due to the type of food provided and the lack of eating utensils. (Pl. Compl., Doc. 1 at 20.)

On or about March 26, 2020, as Plaintiff was returning from visiting with the mental health staff, he observed Defendant Garbett leaving his cell with a spray bottle of bleach, only to find that the head of his mattress had been sprayed with bleach, causing him serious eye issues after sleeping on it. (*Id*. at 80-81.) A nurse subsequently flushed Plaintiff's eyes. (*Id*. at 82.)

### C

### 1

"The Cruel and Unusual Punishment Clause of the Eighth Amendment prohibits the 'unnecessary and wanton infliction of pain' on prisoners." *Dewalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). The requisite inquiry to establish "unnecessary and wanton infliction of pain," however, varies based on the type of constitutional violation alleged. *Hudson*, 503 U.S. at 5. In excessive force cases, the core inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (internal quotation marks omitted). "A court should examine a variety of factors in conducting this inquiry, including the need for an application

of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *DeWalt*, 224 F.3d at 619.

Defendant Edgar contends that he is entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim, as Plaintiff was moved to maintain discipline. Edgar explains that two hundred inmates were given an order to remain standing, facing the wall with their heads down. When Plaintiff informed a tactical team officer of his medical condition, the officer told Plaintiff that he could lean on the wall when required.

However, Plaintiff admits deviating from these instructions by lying down. When a tactical team, which included Defendant Edgar, ordered Plaintiff to stand up, he stated he could not comply because of his medical condition. Thus, Edgar and another tactical team officer dragged Plaintiff, who stood six feet one inch tall and weighed 264 pounds, fifty feet, where a nurse assessed Plaintiff's condition.

Plaintiff posits that a wheelchair or stretcher could have been used to transport him (Pl. Dep. Doc. 84-1 at 46), but asserting an alternative to the force used is not the standard for establishing an excessive force claim. In excessive force cases, a "claimant must show that officials applied force 'maliciously and sadistically for the very purpose of causing harm,' or . . . that officials used force with 'a knowing willingness that [harm] occur.'" *Farmer v. Brennan*, 511 U.S. 825, 835–36 (1994) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)).

The undisputed facts presented do not establish the requisite intent, and Plaintiff fails to produce specific facts showing that there is a genuine issue for trial. Thus, summary judgment is granted to Defendant Edgar on Plaintiff's Eighth Amendment excessive force claim.

**2**

The Eighth Amendment's prohibition against cruel and unusual punishment imposes upon prison officials the duty to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A plaintiff alleging an Eighth Amendment conditions-of-confinement claim must satisfy an objective and a subjective component. *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir. 2002).

The objective component contemplates "unacceptable conditions … that pose a substantial risk to inmate health or safety." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (internal quotation marks omitted). *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012) ("We consider first whether the adverse conditions complained of were sufficiently serious, such that the acts or omissions of prison officials giving rise to these conditions deprived the prisoner of a minimal civilized measure of life's necessities."); *see also* Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (concluding that conditions of confinement count as cruel and unusual punishment only when they deny an inmate "the minimal civilized measure of life's necessities").

If the objective component is established, the Court then considers the subjective component of deliberate indifference. *Rice*, 675 F.3d at 665. This inquiry focuses on whether the prison official acted with a sufficiently culpable state of mind. *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Plaintiff alleges that during his time on crisis watch, he was denied the ability to brush his teeth, shower, and possess toilet paper. Defendants Garbett, Smith, and Snell respond that Plaintiff cannot show they disregarded a substantial

risk of serious harm because Plaintiff was under the supervision of a QMHP during his time in crisis watch.

In this regard, the record shows that co-Defendant Cox, in her role a QMHP, noted that if an inmate on crisis watch refuses to meet with her, she cannot assess whether that inmate poses a risk to himself and others and therefore, cannot permit the inmate to have shower access, out of cell time, or access to other conditions that may present a risk. (Cox Decl., Doc. 88 at 64:14.); *see also* Fed. R. Civ. P. 56(c)(3) (On a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record."). Plaintiff admitted he would not be permitted to shower if he did not speak to Cox, adding that Cox "controlled what goes on while you're in the mental health crisis watch." (Pl. Dep. Doc. 84-1 at 110, 124.)

To the extent Plaintiff claims Defendants denied him toilet paper, Plaintiff acknowledged that he could clean himself after defecating (*Id*. at 124) and does not allege that Defendants' omission was undertaken to inflict pain unnecessarily and wantonly as prohibited under the Eighth Amendment. Plaintiff also admits that he received a toothbrush and toothpaste from the second shift. Thus, a brief delay in receiving hygiene products does not substantiate a conditions of confinement claim. Although "prisoners must be provided with basic human needs," temporarily failing to provide soap, a toothbrush, and toothpaste to a prisoner is not objectively serious where the prisoner "suffer[s] no physical harm," even though he may have "experienced considerable unpleasantness." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (concluding that prison officials' failure to provide inmate toilet paper for five days and soap, a toothbrush, and toothpaste for ten days was insufficient to substantiate a conditions-of-confinement claim).

Similarly, Plaintiff's claim regarding the lack of finger foods does not state a constitutional violation against Defendants Garbett, Smith, and Snell. Plaintiff

11

claims that upon being restricted to finger foods, Garbett, Smith, and Snell were responsible for alerting the kitchen staff and ensuring he received that type of food. Even if true, absent a claim concerning the lack of food or its nutritious value, the absence of eating utensils is insufficient to establish a constitutional violation. *See Martin v. Lane*, 766 F. Supp. 641, 648 (N.D. Ill. 1991) (concluding that claims about the lack of eating utensils are not actionable as the Constitution does not mandate comfortable prisons). Plaintiff acknowledges that he received meals, albeit some could have been consumed more easily using utensils, which Plaintiff could not possess while on crisis watch. Although inconvenient, Plaintiff's plight does not establish an Eighth Amendment violation.

As for the allegation that Defendant Garbett sprayed bleach on Plaintiff's mattress, Plaintiff admits he did not see Garbett spray his cell but observed him leaving his cell with a spray bottle. Plaintiff further asserts that because the spraying incident occurred during the COVID-19 pandemic, Garbett should have only sprayed the toilet. Plaintiff noted that "everything" in his cell "was wet." (Pl. Dep., Doc. 84-1 at 80-81.) However, without providing evidence that establishes or permits a reasonable inference of malicious intent, which Plaintiff does not offer, Plaintiff's speculation is insufficient to establish a constitutional violation under the Eighth Amendment.

### 3

"There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). "[O]nly those searches that are maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). Even where a valid penological reason justifies a search, how "the

searches were conducted must itself pass constitutional muster." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009).

Plaintiff testified that Defendant Snell conducted a strip search of his person twenty minutes after Plaintiff's placement in segregation on February 27, 2020. At that time, Plaintiff neither knew Snell nor had any prior or adverse interaction with him, even after Snell conducted the strip search. (Pl. Dep., Doc. 84-1 at 66, 68.) Snell visually observed Plaintiff from outside the cell bars, in a location where other corrections officers were present and inmates were housed. (*Id.* at 69.) Specifically, Plaintiff stated that Snell told Plaintiff to bend over so that he could observe whether he possessed contraband. (*Id.* at 68.) Plaintiff acknowledged that placement on crisis watch restricts possession of items that could be used to harm oneself. (*Id.* at 103.)

Despite Plaintiff's assertions, strip searches conducted in the presence of staff or other inmates are neither per se constitutional nor per se unconstitutional. *Mays*, 575 F.3d at 649-50; *Meriwether v. Faulkner*, 821 F.2d 408, 418 (7th Cir. 1987). "[A] prisoner's expectation of privacy is extremely limited in light of the overriding need to maintain institutional order and security . . . ." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 537, 558–60 (1979)). Nonetheless, prison officials may not engage in "calculated harassment unrelated to prison needs." *Meriwether*, 821 F.2d at 418 (quoting *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)). Moreover, a strip search may be unconstitutional if it "gratuitously expose[s] to other prisoners the nudity of each prisoner being searched." *Mays*, 719 F.3d at 634.

Here, the inference gleaned from Defendant Snell's strip search was to ensure Plaintiff did not conceal contraband in his body cavities that he could later use to harm himself. Additionally, the record is devoid of any facts supporting a claim that Snell's basis for conducting the strip search was to humiliate and inflict psychological pain. *See Calhoun*, 319 F.3d at 939 (advising that even where a valid

13

penological justification justifies a search, it may still violate the Eighth Amendment if it is "conducted in a harassing manner intended to humiliate and inflict psychological pain").

Accordingly, because Defendants Edgar, Garbett, Smith, and Snell have satisfied their threshold burden of providing evidence to show the absence of a genuine issue of material fact that Plaintiff has failed to rebut with specific facts, their Motion for Summary Judgment (Doc. 83) is granted.

## IV

In light of the foregoing, the Court Orders as follows:

1) The Motion for Summary Judgment filed by Defendant Brandon Edgar, Hunter Garbett, Keenan Smith, and Brandon Snell is GRANTED.

2) The Clerk of the Court is DIRECTED to terminate Brandon Edgar, Hunter Garbett, Keenan Smith, and Brandon Snell as Defendants.

*It is so ordered.*

Entered: September 8, 2025

s/Jonathan E. Hawley
U.S. District Judge