IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

PERRY JAMES ROSETTO,
    Plaintiff,

v.

ROB JEFFREYS *et al.*,
    Defendants.

Case No. 3:22-cv-03035-JEH

**Order**

    Before the Court is a Motion for Summary Judgment (Doc. 88) filed by Defendants Zorian Trusewych and Carolyn Cox. Plaintiff Perry James Rosetto, an inmate at Illinois River Correctional Center, filed a response (Doc. 97), and Defendants have filed their reply (Doc. 99). Plaintiff has also filed a Motion for Counsel (Doc. 95). For the following reasons, Defendants' dispositive motion is granted. Consequently, Plaintiff's Motion for Counsel is moot.

**I**

    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come

forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

"When opposing a properly supported motion for summary judgment, the non-moving party must 'cit[e] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence … of a genuine dispute.'" *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)). All facts must be construed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence supporting the nonmovant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252.

## II

In March 2022, Plaintiff filed a complaint (Doc. 1) under 42 U.S.C. § 1983, alleging that several officials at Western Illinois Correctional Center ("Western") violated his constitutional rights. After screening, the Court determined that Plaintiff stated Eighth Amendment deliberate indifference claims against Defendants Caroline Cox and Zorian Trusewych, among others. (Doc. 16.) Specifically, Trusewych refused to treat Plaintiff's back pain and numbness, and Cox refused to provide Plaintiff with eating utensils, regular showers, clean clothing, and recreation time. (*Id*.)

## III

### A

Section 7.1(D)(2) of the Court's Local Rules outlines the requirements when responding to a Motion for Summary Judgment, which mandates addressing each

of Defendants' material facts and noting which are undisputed material facts, disputed material facts, disputed immaterial facts, or undisputed immaterial facts. Civil LR 7.1(D)(2)(b)(1-4). Plaintiff may also add material facts in opposition to the filing. (*Id*. at 7.1(D)(2)(b)(5)). Plaintiff's response does not contain this information.

Instead, Plaintiff proceeds under Federal Rule of Civil Procedure 56(d), which "allows non-movants to argue that further discovery is necessary to resolve the motion." *Felton v. City of Chicago*, 827 F.3d 632, 637 (7th Cir. 2016); *see also* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."). However, "[t]he mere fact that discovery is incomplete is not enough to prevent summary judgment." *Smtih v. OSF Healthcare System*, 933 F.3d 859, 864 (7th Cir. 2019). A party seeking relief under Rule 56(d) must show specific reasons why discovery should be extended, "which requires more than a fond hope that more fishing might net some good evidence." (*Id*.)

A review of the docket shows that the Court entered a Scheduling Order initially setting March 23, 2023, as the close of discovery. (Doc. 33 at 8:30.) After Defendants Cox and Trusewych filed a dispositive motion alleging Plaintiff failed to exhaust administrative remedies (Doc. 36), the Court granted their motion to stay discovery (Doc. 38) pending resolution of their filing. On May 2, 2023, the Court denied Defendants' dispositive motion. (Doc. 52.) Three days later, the Court lifted the imposed stay and set October 2, 2023, as the close of discovery.

The Court later considered Plaintiff's Motion to Compel Discovery (Doc. 68). Therein, Plaintiff sought to compel Defendants Cox and Trusewych to respond to the discovery requests Plaintiff served on November 18, 2023, and December 29, 2023. Defendants claimed they did not receive the discovery

requests that Plaintiff claims he sent. On March 18, 2024, the Court denied Plaintiff's motion, noting that he failed to comply with the Court's Scheduling Order by appending the discovery requests at issue to his Motion to Compel. (Doc. 71 at 7-8.) Thereafter, the Court granted the parties' Motions for Extensions of Time (Docs. 57, 61, 66, 67), extending the discovery deadline to April 30, 2024. (*Id*. at 8.) The Court also granted each of Plaintiff's subsequent Motions for Extensions of Time (Docs. 72, 73, 78), which extended the close of discovery to September 23, 2024.

Plaintiff asserts that "he has not been given [a] fair opportunity to obtain discoverable evidence." (Pl. Res., Doc. 97 at 2:3.) Specifically, in support of his Rule 56(d) response, Plaintiff notes his November 18 and December 29, 2023, discovery requests that Defendants state they never received. However, Plaintiff does not state what actions he took to acquire the discovery sought in the six months that passed between the Court's March 18, 2024, denial of his motion to compel and the end of discovery on September 23, 2024. For example, Plaintiff neither filed a renewed motion to compel that appended the discovery request nor does Plaintiff claim he resent the discovery request at issue during the six months that passed between the Court's March 18, 2024, Order and the end of discovery on September 23, 2024. Defendants confirm that Plaintiff did not resend the discovery requests and state they produced 1,600 documents that included Plaintiff's medical records. (Def. Reply, Doc. 99 at 2.) Thus, the Court denies Plaintiff's Rule 56(d) request.

B

Although Plaintiff's failure to respond to Defendants' dispositive motion requires the Court to deem Defendants' factual assertions admitted under Local Rule 7.1(D)(2)(b)(6), summary judgment in favor of the movant is not automatic. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("[A] nonmovant's failure to respond to a summary judgment motion, … does not, of course,

automatically result in judgment for the movant.") The ultimate burden remains with Defendants to show that they are entitled to judgment as a matter of law. *Id*. Thus, the following material facts are based on Defendants' properly supported brief and the Court's review of the provided record.

Plaintiff was shot on November 25, 2006, nine years before entering the Illinois Department of Corrections ("IDOC") on December 17, 2015. (Pl. Dep., Doc. 84-1 at 27, 88.) Plaintiff was told that he would experience pain and nerve damage during his life, as removing the bullet would cause more damage. (*Id*. at 86.) Plaintiff received pain medication for his condition before entering IDOC. (*Id*. at 85.) After entering IDOC, Plaintiff did not receive any medical treatment except for a low bunk permit based on his claim that he could not use his left arm to climb. (*Id*. at 88.) Plaintiff transferred to Western on October 16, 2019. (Trusewych Decl., Doc. 88 at 53.)

On February 27, 2020, a corrections sergeant reported Plaintiff for a crisis watch evaluation. (Trusewych Decl., Doc. 88 at 53.) Plaintiff stated he wanted to be on crisis watch due to his interaction with a corrections officer on February 27, 2020, asserting that he felt he would be safe on crisis watch. (Pl. Dep., Doc. 84-1 at 99.) Plaintiff told the mental health professional that he wanted to harm or kill himself so he could get put on crisis watch. (*Id*. at 102.)

Defendant Trusewych has been employed by Wexford Health Sources, Inc., as Western's Medical Director since September 24, 2018. (Trusewych Decl., Doc. 88 at 52.) On March 4, 2020, Trusewych examined Plaintiff for complaints related to a February 27, 2020, incident where correction officers ordered Plaintiff to stand for two hours. (*Id*. at 54.) Plaintiff explained that he experienced numbness in his chest, abdomen, and legs. Trusewych noted that Plaintiff did not appear to be in acute distress but ordered x-rays and Plaintiff's medical records from a hospital and neurological institute that had treated Plaintiff's condition. (*Id*.)

5

After Trusewych's examination, Plaintiff reported to medical staff or medical staff observed that he was stable (March 7 and 8, 2020), made no complaints (March 11 and 16), and denied any needs or issues (March 21, 2020). (*Id*. at 55-56.) On March 22, 2020, Plaintiff complained of back pain to a nurse, who prescribed one to two tablets daily of Acetaminophen for three days. (Pl. Med. Rec., Doc. 89-3 at 126.) At that time, the nurse did not refer Plaintiff to a physician. (Trusewych Decl., Doc. 88 at 56.)

On March 30, 2020, Defendant Trusewych received Plaintiff's X-ray results. (*Id*. at 57.) Trusewych noted that Plaintiff's pelvis contained a "retained bullet fragment projecting over the sacrum at the midline." (*Id*.) Trusewych observed that Plaintiff's hip joints were "intact bilaterally" and no evidence of an acute fracture or dislocation. (*Id*.) Based on Plaintiff's X-ray results, Trusewych determined that "no specific treatment plan was necessary to address Plaintiff's condition besides providing anti-inflammatory medications when needed." (*Id*.)

Thereafter, Defendant Trusewych noted Plaintiff's medical records documented his interaction with medical staff and his unwillingness to have his vital signs taken; the medical action taken during Plaintiff's hunger strike, which lasted from March 26 to 31, 2020; and his occasional refusal to interact with medical personnel. (*Id*. at 58.) Trusewych noted that he is not aware of a patient's refusals or encounters with healthcare unit staff while on crisis watch, unless directly brought to his attention. (*Id*. at 52, 59.) Plaintiff was released from crisis watch on May 4, 2020. (*Id*. at 59.)

On June 25, 2020, Defendant Trusewych examined Plaintiff for complaints of pain estimated as a five on a ten-point scale and "a knot in his tailbone" that Plaintiff described as stabbing, throbbing, and intermittent. (*Id*. at 60.) Based on Plaintiff's clinical history, Trusewych concluded that Plaintiff's clinical history,

coupled with his complaints, was consistent with coccydynia[1], but Plaintiff refused Ibuprofen and Tylenol. (*Id*.) At the time of his October 19, 2023, deposition, Plaintiff acknowledged receiving muscle relaxers while at Western for his condition. (Pl. Dep., Doc. 84-1 at 88-89.)

Defendant Cox is a licensed social worker and was employed as a Qualified Mental Health Professional ("QMHP") at Western from January 22, 2019, to June 23, 2022. (Cox. Decl., Doc. 88 at 62.) As a QMHP, Cox's duties included providing clinical screenings for treatment needs of referred inmates, providing crisis intervention counseling, brief and group therapy, providing consultation on mental health issues to the medical staff, monitoring the provisions of crisis services to include review of documentation, as well as other duties required or assigned within her training, certification, and licensure. (*Id*. at 63.) When an inmate is on crisis watch, it is standard protocol for the inmate only to receive three items: a smock, a mattress, and a crisis blanket as a precaution for their own safety as well as the safety of others. (*Id*. at 64.) Cox explained that if an inmate refuses to meet with her, she cannot assess whether or not he is a danger to himself or others and, as a result, cannot approve access to showers, out of cell time, or other conditions which may present a risk. (*Id*.)

Plaintiff knew that while on crisis watch, he would only be provided a smock, mattress, and blanket due to the risk of potential harm to himself. (*Id*. at 103.) Plaintiff also acknowledged that he would not be allowed to shower if he did not speak with Defendant Cox. (*Id*. at 110.) Plaintiff admitted that he refused to meet with or be evaluated by Defendant Cox most of the time he was on crisis watch. (*Id*. at 93-94.) After speaking with Cox on March 20, 2020, Plaintiff

---

[1] See Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/back-pain/expert-answers/tailbone-pain/faq-20058211 (last visited September 8, 2025) ("Tailbone pain is sometimes called coccydynia or coccygodynia" and "usually goes away on its own within a few weeks or months" and recommending "pain relievers, such as acetaminophen … or ibuprofen" for relief).

showered that day. (*Id.* at 110-111.) Plaintiff was informed by Defendant Cox that if he talked with her, he would be given more privileges, such as time out of the cell, and that if he did not speak with her, then he would not be afforded privileges. (*Id.* at 100-101.) Plaintiff stated that Cox "controlled what goes on while you're in the mental health crisis watch." (Pl. Dep. Doc. 84-1 at 110, 124.)

### C

### 1

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail on a claim of inadequate medical care, an inmate must show the prison official was deliberately indifferent to a serious medical need. *Id.* at 106. The deliberate indifference standard requires an inmate to satisfy a substantial threshold to support a cruel and unusual punishment claim under the Eighth Amendment. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). "[A] claim based on deficient medical care must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

An objectively serious medical need is one that a physician has diagnosed as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). To satisfy the subjective component, a plaintiff must show "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"Claims of deliberate indifference to medical needs are examined differently depending on whether the defendants in question are medical professionals or

[laypersons]." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Treatment decisions made by medical professionals are presumptively valid. *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). "A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances." *Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008). "When a medical professional acts in his professional capacity, he may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *McGee*, 721 F.3d at 481 (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008).

Defendant Trusewych asserts that Plaintiff cannot establish either component of his deliberate indifference claim given this record. The Court confines its analysis to the subjective component, which is dispositive. In this regard, the presented evidence neither shows nor supports the inference that Trusewych had the requisite state of mind to establish the subjective prong of Plaintiff's deliberate indifference claim. In other words, the evidence does not demonstrate that any acts or omissions committed by Trusewych concerning Plaintiff's medical treatment were either undertaken to inflict punishment prohibited by the Eighth Amendment or that he disregarded Plaintiff's serious medical needs to Plaintiff's detriment. *See Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019) ("The Supreme Court has interpreted the Eighth Amendment to prohibit any punishments 'which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."'").

9

The Court's earlier summation of the care Plaintiff received based on the extensive medical record provided is the antithesis of deliberate indifference. Defendant Trusewych and the other medical professionals at Western provided conservative medical care to address Plaintiff's known persistent history of intermittent pain that Trusewych implemented based on Plaintiff's complaints and his assessment of diagnostic tests, experience, and medical observations. At no point does the record establish or permit the reasonable inference that Trusewych disregarded plaintiff's condition sufficient to establish deliberate indifference in violation of the Eighth Amendment.

Although Plaintiff may have desired a different and more aggressive medical approach, he fails to present evidence that the medical treatment Defendant Trusewych provided violated his rights under the Eighth Amendment deliberate indifference standard.

2

The Eighth Amendment's prohibition against cruel and unusual punishment imposes upon prison officials the duty to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A plaintiff alleging an Eighth Amendment conditions-of-confinement claim must satisfy an objective and a subjective component. *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir. 2002).

The objective component contemplates "unacceptable conditions … that pose a substantial risk to inmate health or safety." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (internal quotation marks omitted). *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012) ("We consider first whether the adverse conditions complained of were sufficiently serious, such that the acts or omissions of prison officials giving rise to these conditions deprived the prisoner of a minimal civilized measure of life's necessities."); *see also* Rhodes *v.* Chapman, 452 U.S. 337, 347 (1981) (concluding that conditions of confinement count

as cruel and unusual punishment only when they deny an inmate "the minimal civilized measure of life's necessities").

If the objective component is established, the Court then considers the subjective component of deliberate indifference. *Rice*, 675 F.3d at 665. This inquiry focuses on whether the prison official acted with a sufficiently culpable state of mind. *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Defendant Cox contends that she is entitled to summary judgment because Plaintiff fails to produce facts to establish deliberate indifference. The Court agrees.

The record reveals that Plaintiff knew that being placed on crisis watch would entail the implementation of restrictions intended to prevent self-harm. Plaintiff also acknowledged that to gain access to the restricted privileges, he had to demonstrate he was no longer a threat to himself and others by communicating with Defendant Cox in her capacity as a QMHP. Despite this knowledge, Plaintiff explicitly admitted that he would not speak with Cox, would not commit to his safety, and stated his intent to remain on crisis watch, adding that he intended to "make the officers accountable for dealing with [him]." (Cox. Decl., Doc. 88 at 72.)

As earlier noted, Plaintiff claimed that Defendant Cox "controlled what goes on while you're in the mental health crisis watch." (Pl. Dep. Doc. 84-1 at 110, 124.) The Court disagrees with Plaintiff's characterization. The reasonable inference gleaned from the facts mentioned above is that Plaintiff could have alleviated himself of the restriction placed on the conditions of his confinement for safety reasons by cooperating, but he knowingly refused.

11

Given these facts, Plaintiff cannot establish a conditions of confinement claim based on his own self-deprivation, which is not actionable. *See Freeman v. Berge*, 441 F.3d 543, 547 (7th Cir. 2006) (holding that there was no Eighth Amendment violation where plaintiff's "food deprivation was self-inflicted" and there was "no evidence that he experienced real suffering . . . or any lasting detrimental health consequences"); *see also Isby v. Clark*, 100 F.3d 502, 506 (7th Cir. 1996) (stating that "an inmate who causes filthy conditions to exist may not have a cruel and unusual leg to stand on").

Accordingly, the Motion for Summary Judgment filed by Defendants Cox and Trusewych is granted. Consequently, Plaintiff's Motion for Counsel is moot.

### IV

In light of the foregoing, the Court Orders as follows:

1) The Motion for Summary Judgment filed by Defendants Cox and Trusewych (Doc. 88) is GRANTED.

2) Plaintiff's Motion for Counsel (Doc. 95) is MOOT.

3) The Clerk of the Court is DIRECTED to enter judgment in favor of Defendants and against Plaintiff under Federal Rule of Civil Procedure 58.

4) If Plaintiff wishes to appeal this judgment, she must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* MUST identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (stating that an appellant should be allowed to submit a statement of her grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith"); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good-faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, she will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered: September 9, 2025

<u>s/Jonathan E. Hawley</u>
U.S. District Judge